UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

XIAOBIN CHEN,

                              Petitioner,

          -against-

JUDITH ALMODOVAR, *in her official capacity as Field Office Director of Enforcement and Removal Operations, New York City, Immigration and Customs Enforcement*; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; PAM BONDI, *in her official capacity as Attorney General of the United States*; EXECUTIVE OFFICE OF IMMIGRATION REVIEW,

                              Respondents.

MEMORANDUM DECISION AND ORDER

26 Civ. 291 (GBD)

------------------------------------------------------------x

GEORGE B. DANIELS, United States District Judge:

Petitioner Xiaobin Chen ("Petitioner") brings a Petition for Writ of Habeas Corpus (the "Petition"), pursuant to 28 U.S.C. § 2241, challenging his January 13, 2026, arrest and ongoing detention by officials from the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). (*See* Pet., ECF No. 1 ¶17.) Specifically, Petitioner contends that his arrest and detention are in violation of the Immigration and Nationality Act ("INA") and his constitutional due process rights under the Fifth Amendment. (*Id.* ¶¶ 58–71.) Petitioner seeks his immediate release or, alternatively, a bond hearing at which the respondents (collectively, the "Government") bears the burden of justifying his continued detention. This Court finds that the Government's detention of Petitioner fails to adhere to the statutory requirements governing the apprehension and detention of noncitizens within the United States. *See* 8 U.S.C. § 1226. Accordingly, the Petition is GRANTED, and the Government is ordered to immediately release Petitioner.

I. **FACTUAL BACKGROUND**

Petitioner is a citizen of China who arrived in in the United States at or near Tecate, California more than two years ago on December 10, 2023. (*See* Notice to Appear, ECF No. 4-1, at 1.) On December 14, 2023, DHS officials served Petitioner with a Form I-200 arrest warrant, which authorized immigration officials to arrest and detain Petitioner "pursuant to [8 U.S.C. § 1226]." (December 14, 2023, Warrant, ECF No. 4-2, at 1.) That same day, DHS officials, "[i]n accordance with [8 U.S.C. § 1226]," released petitioner on his own recognizance. (Order of Release on Recognizance, ECF No. 4-3, at 1.) DHS also served on Petitioner a Notice to Appear, which ordered Petitioner to appear before an immigration judge on November 12, 2024, in Newark, New Jersey. (Notice to Appear at 1.)

After his release, Petitioner moved to Queens, New York, where he currently resides. (Pet. ¶ 50.) Petitioner works at a restaurant. He has a fixed residence. He has not had any encounters with law enforcement since moving to New York, other than his scheduled required reporting. (*Id.* ¶ 53.) Prior to his current detention, Petitioner applied for asylum and withholding of removal. (*Id.* ¶ 54.) This application is currently pending, and Petitioner's next hearing date is scheduled for June 23, 2027. (*Id.*)

On January 13, 2026, Petitioner appeared for a scheduled check-in at 26 Federal Plaza. (*Id.* ¶ 51.) Once there, ICE arrested Petitioner and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.* ¶ 52.) ICE is currently detaining Petitioner at Delaney Hall in New Jersey. (Gov't Opp., ECF No. 4, at 1.)

On January 13, 2026, Petitioner filed this Petition. On January 14, 2026, this Court issued an Order to Show Cause and scheduled a hearing on the Petition for January 27, 2026. (ECF No. 5.) On January 14, 2026, the Government filed a letter brief in opposition to the Petition. (*See* Gov't Opp.) The Government's three-page brief "relies upon, and incorporates by reference, the

legal arguments [the Government] presented in" *Quinteros Moran v. Joyce*, No. 25 Civ. 9645 (GBD), 2025 WL 3632895 (S.D.N.Y. Dec. 15, 2025). (*Id.* at 2.) The Government also requested that this Court cancel the previously scheduled conference and resolve this matter on the filings. (*Id.* at 3.) On January 16, 2026, Petitioner filed his reply, which agreed with the Government's request to cancel the conference.

## II. LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Under 28 U.S.C. § 2241, "[f]ederal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## III. PETITIONER IS ENTITLED TO IMMEDIATE RELEASE

"It is well established that the Fifth Amendment [Due Process Clause] entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S., 690. These protections extend to noncitizens, including those in removal proceedings. *See id.* at 693 ("[T]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

The process due to a noncitizen detained under the INA turns on which provision governs the noncitizen's detention: § 1225 or § 1226. Sections 1225(b)(1) and (b)(2) "mandate detention of aliens throughout the completion of applicable proceedings" when the noncitizen is confronted at or near the border. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 836–37, 848 (2018) (explaining that § 1225 applies "at the Nation's borders and ports of entry"). Section 1226(a), however, allows

3

the Attorney General to release "the alien on 'bond . . . or conditional parole.'" *Id.* at 845–48 (*quoting* 8 U.S.C. § 1226(a)).[1] Courts in this district have repeatedly held that when a noncitizen is arrested while residing in the United States—as opposed to those arrested when they arrive at the border—their detention is governed by § 1226. *See e.g., Yao v. Almodovar*, No. 25-cv-9982 (PAE), 2025 WL 3653433, at *2 (S.D.N.Y. Dec. 17, 2025) ("[N]oncitizens . . . intercepted at the border, released on their own recognizance pending removal, and later detained by ICE [] are covered by § 1226, not the mandatory detention scheme of § 1225."); *Romero v. Francis*, No. 25-CV-8112 (JGK), 2025 WL 3110459, at *2 (S.D.N.Y. Nov. 6, 2025) (noting that the Supreme Court has long-recognized a distinction between "statutes governing noncitizens seeking admission at the border and those governing noncitizens already within the United States"); *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025) ("[Section] 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [Petitioner], who has been residing in the United States for more than two years.").

Here, Petitioner resided in the United States for over two years before ICE detained him during a scheduled immigration check-in at 26 Federal Plaza. Further, DHS has consistently treated Petitioner as subject to detention on a discretionary basis under § 1226(a). DHS initially arrested Petitioner on December 14, 2023, pursuant to a warrant that explicitly cited § 1226. (December 14, 2023, Warrant, at 1.) DHS then released Petitioner on his own recognizance "[i]n accordance with [8 U.S.C. § 1226]." (Order of Release on Recognizance at 1.) Taken together, these facts support Petitioner's claim that he was detained as someone "already in the country," *Jennings*, 138 S. Ct., at 838, pursuant to the Government's discretionary authority under § 1226(a).

---

[1] Additionally, under § 1226(c), the Attorney General "'shall take into custody any alien' who falls into one of the enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 130 S. Ct., at 846. Petitioner does not have a criminal record, so this provision does not apply.

the Attorney General to release "the alien on 'bond . . . or conditional parole.'" *Id.* at 845–48 (*quoting* 8 U.S.C. § 1226(a)).[1] Courts in this district have repeatedly held that when a noncitizen is arrested while residing in the United States—as opposed to those arrested when they arrive at the border—their detention is governed by § 1226. *See e.g., Yao v. Almodovar*, No. 25-cv-9982 (PAE), 2025 WL 3653433, at *2 (S.D.N.Y. Dec. 17, 2025) ("[N]oncitizens . . . intercepted at the border, released on their own recognizance pending removal, and later detained by ICE [] are covered by § 1226, not the mandatory detention scheme of § 1225."); *Romero v. Francis*, No. 25-CV-8112 (JGK), 2025 WL 3110459, at *2 (S.D.N.Y. Nov. 6, 2025) (noting that the Supreme Court has long-recognized a distinction between "statutes governing noncitizens seeking admission at the border and those governing noncitizens already within the United States"); *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025) ("[Section] 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [Petitioner], who has been residing in the United States for more than two years.").

Here, Petitioner resided in the United States for over two years before ICE detained him during a scheduled immigration check-in at 26 Federal Plaza. Further, DHS has consistently treated Petitioner as subject to detention on a discretionary basis under § 1226(a). DHS initially arrested Petitioner on December 14, 2023, pursuant to a warrant that explicitly cited § 1226. (December 14, 2023, Warrant, at 1.) DHS then released Petitioner on his own recognizance "[i]n accordance with [8 U.S.C. § 1226]." (Order of Release on Recognizance at 1.) Taken together, these facts support Petitioner's claim that he was detained as someone "already in the country," *Jennings*, 138 S. Ct., at 838, pursuant to the Government's discretionary authority under § 1226(a).

---

[1] Additionally, under § 1226(c), the Attorney General "'shall take into custody any alien' who falls into one of the enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 130 S. Ct., at 846. Petitioner does not have a criminal record, so this provision does not apply.

The Government's letter brief does not attempt to dispute these facts. Rather, the Government merely points the Court to the arguments it raised in *Quinteros Moran*. (Gov't Opp. at 2.) But *Quinteros Moran* concerned a different fact pattern that is completely inapplicable here. Unlike in *Quinteros Moran*, Petitioner was never apprehended at the border, and there is nothing in the record to suggest that he was previously held under § 1225(b).[2] All the evidence before this Court indicates that § 1226 applies, not § 1225.

When detaining a noncitizen, Due Process requires that the Government, at a minimum, adhere to the requirements of the statute. Under § 1226, the Government "at any time may revoke a bond or parole authorized under" § 1226. 8 U.S.C. § 1226(b). "But Due Process still requires that such discretion actually be exercised—i.e., that some determination actually be made." *Tumba v. Francis*, No. 25-CV-8110 (LJL), 2025 WL 3079014, at *7 (S.D.N.Y. Nov. 4, 2025). "[N]othing in the record reflects . . . (1) who made the decision to detain him, (2) when that decision occurred, (3) on what basis the decision to detain him was made, (4) whether there was any material change in circumstances with respect to [Petitioner] that triggered his detention, or (5) whether there was any sort of new policy in place that triggered his detention." *Lopez Benitez*, 795 F.Supp.3d at 494. Because the Government has failed to present any facts suggesting that it exercised its discretion in detaining Petitioner, his detention violates due process. *See Lopez*, 2018 WL 2932726, at * 12 ("Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a

---

[2] The Government's letter brief also seriously mischaracterizes this Court's holding in *Quinteros Moran*. The Government claims that *Quinteros Moran* held that § 1226 governs whenever a noncitizen has "been released from custody," "even if previously held under § 1225(b)." (*See* Gov't Opp. at 2.) That is a tortured reading of this Court's opinion. Instead, *Quinteros Moran* turned on the fact that the Government specifically invoked § 1226 when it (1) released the petitioner on bond in 2013 and (2) issued a warrant for his arrest twelve years later. *Quinteros Moran*, 2025 WL 3632895, at * 5–6. No where does the opinion claim that any release, such as humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), would sound in § 1226.

meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment.").

Immediate release is the proper remedy. Bond hearings "are provided for the purpose of custody re-determination—a hearing held by an immigration judge after ICE makes its initial decision to detain." *Chipantiza-Sisalema v. Francis*, No. 25 CIV. 5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (citing 8 C.F.R. § 236.2(d)). But "such a hearing is no substitute for the requirement that [the Government] engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Id.* Here, the Government has presented no evidence that they made an initial discretionary decision to detain Petitioner. Furthermore, they do not even attempt to argue that Petitioner poses a risk of flight or a danger to the community. Petitioner's arrest and detention is indiscriminate and without good cause. As such, a hearing would not remedy Petitioner's ongoing unlawful detention. Petitioner is therefore entitled to release. *See Yao*, 2025 WL 3653433, at *11 ("Although [Petitioner]'s release today cannot cure his loss of liberty . . ., this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so.").

## IV.     CONCLUSION

Petitioner's petition for writ of habeas corpus is GRANTED. The Government is ordered to immediately release Petitioner from custody and file a letter entry on the docket no later than 5:00 p.m. on January 23, 2026, indicating its compliance with this order. Further, because the Government has not argued that Petitioner is a risk of flight or a danger to the community, Petitioner's release shall be without any physical or electronic monitoring device or restraint condition. The Clerk of Court is directed to close this case accordingly.

Dated: New York, New York
       January 22, 2026

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge